Submitted August 29, 2012, conviction for first-degree kidnapping reversed; remanded for resentencing; otherwise affirmed May 15, 2013

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MARVIN OPITZ,
*Defendant-Appellant.*

Marion County Circuit Court
09C48141; A146084

301 P3d 946

Peter Gartlan, Chief Defender, and Ryan T. O'Connor, Senior Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Anna M. Joyce, Solicitor General, and Jeremy C. Rice, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Haselton, Chief Judge, and Sercombe, Judge.

HASELTON, C. J.

Defendant appeals, challenging, *inter alia*, his conviction for first-degree kidnapping, ORS 163.235, assigning error to the trial court's denial of his motion for judgment of acquittal (MJOA) and entry of conviction on that charge.[1] Defendant contends that the state did not adduce sufficient evidence to allow the trial court to find either of the conjunctive, requisite elements of ORS 163.225 beyond a reasonable doubt. For the reasons amplified below, we conclude that the evidence was insufficient for a reasonable trier of fact to find that defendant moved the victim "from one place to another." ORS 163.225(1)(a). Accordingly, the trial court erred in denying the MJOA. We reverse defendant's conviction for first-degree kidnapping, remand for resentencing, and otherwise affirm.[2]

In reviewing the denial of an MJOA, we view the facts in the light most favorable to the state to determine whether a rational trier of fact could find each element of the charged offense beyond a reasonable doubt. *State v. Cervantes*, 319 Or 121, 125, 873 P2d 316 (1994).

Stated consistently with that standard, the facts material to the kidnapping charge are as follows. Defendant and the victim met in early 2008, and, in the spring of 2008,

---

[1] ORS 163.235 provides, as relevant:

"(1) A person commits the crime of kidnapping in the first degree if the person violates ORS 163.225 with any of the following purposes:

"* * * * *

"(c) To cause physical injury to the victim[.]"

ORS 163.225 provides, in part:

"(1) A person commits the crime of kidnapping in the second degree if, with intent to interfere substantially with another's personal liberty, and without consent or legal authority, the person:

"(a) Takes the person from one place to another; or

"(b) Secretly confines the person in a place where the person is not likely to be found."

[2] Although our disposition, necessitating resentencing, obviates any consideration of defendant's remaining assignments of error, which pertain to departure and consecutive sentences imposed by the trial court, we observe that, as defendant candidly acknowledges, those challenges are precluded by *State v. Speedis*, 350 Or 424, 256 P3d 1061 (2011), *State v. Groves*, 221 Or App 371, 190 P3d 390, *rev den*, 345 Or 415 (2008), and *State v. Anderson*, 208 Or App 409, 145 P3d 245 (2006), *rev den*, 343 Or 33 (2007).

they became romantically involved. Shortly thereafter, defendant moved into the victim's one-bedroom apartment in Woodburn, where he intermittently resided until the summer of 2009. That apartment consisted of a living room, a combined kitchen and dining area, one bathroom, and a hallway leading to a bedroom.

In October 2008, before the events leading to this case, defendant was convicted of fourth-degree assault constituting domestic violence for his conduct related to the victim. In the summer of 2009, defendant spent three months in jail. During that period, the victim obtained a restraining order against him. In early September 2009, shortly after defendant was released, he and the victim resumed their relationship, and the victim allowed defendant to stay at her apartment. At about 9:00 p.m. on the evening of September 10, 2009, defendant came to the apartment. Although the victim thought that defendant "seemed agitated," she allowed him into the apartment.

Shortly after defendant arrived, and as defendant and the victim were in the living room, defendant "worked himself up" about the fact that he had spent time in jail, for which he blamed the victim. Defendant's agitation escalated, and he began slapping and punching the victim as she lay on the couch. He then threw her onto the floor, dragged her to the kitchen by her arm, and threw her against a wall and a bookshelf while "bitching about [the victim] putting him in jail." At that point, the victim was bleeding. Defendant pulled her by her hair into the bathroom and threw her headfirst into the shower; consequently, the victim's face smashed into a metal bar in the shower, fracturing the orbital bone around her left eye. Defendant turned cold water onto the victim to rinse off the blood.

Defendant then took the victim to the living room, where she lay on the floor. At that point, defendant had obtained a syringe. Defendant placed his knee on the victim's chest and began stabbing her in the arm, neck, and face with the syringe while telling her that he was injecting her with air and that "[t]he air will kill you, you'll be dead in a few minutes." Defendant then moved the victim to the

bedroom, threw her onto the bed, would not let her get up, and continued hitting her until both defendant and the victim eventually fell asleep on the bed at approximately 3:00 a.m. on September 11.

During the night of September 10 to 11, the victim told defendant that she needed medical attention because she felt that "something [was] wrong because there [was] squishy stuff going on in [her] stomach." She asked defendant to leave her apartment and told him that, if he would leave, she would not tell anyone that he had injured her. However, for the next two days, defendant refused to leave the apartment; he would not allow the victim to get close to the door or windows or leave to seek medical attention for her injuries. The victim did not attempt to escape because she was so badly injured that she did not believe that she could physically outrun or outmaneuver defendant and she was afraid that, if she tried to escape, defendant would "hurt [her] some more."

At some point after the assault, defendant instructed the victim to write a note to her adult daughter, falsely stating that she had gone to the coast with defendant and his son.[3] The victim complied, but she wrote the note in sloppy handwriting (her handwriting was usually "clear and smooth") and signed the note "Mom" (she usually signed her first name), because she wanted to signal to her daughter that something was wrong. Defendant placed the note on the apartment door, while remaining in the apartment with the victim.

On the third day, September 12, the victim's daughter found the note. Suspicious that something was wrong, the daughter requested that the police perform a welfare check. When the police arrived at the victim's apartment, defendant had fled after telling the victim that he would kill her if she answered the door or went outside before her wounds had healed. The police took the victim to the hospital, where she received medical treatment for her substantial injuries.

---

[3] The victim and her daughter shared a close relationship and the daughter frequently visited the victim's apartment.

Defendant was subsequently apprehended and charged with attempted murder, ORS 163.115; ORS 161.405 (Count 1); first-degree kidnapping, ORS 163.235 (Count 2); second-degree assault constituting domestic violence, ORS 163.175 (Count 3); first-degree burglary, ORS 164.225 (Count 4); and fourth-degree assault constituting domestic violence, ORS 163.160 (Count 5). As pertinent to our consideration of the first-degree kidnapping charge, the state alleged in the amended indictment that "defendant, on or about September 10, 2009, in Marion County, Oregon, did unlawfully and knowingly, without consent or legal authority, take [the victim] from one place to another, with intent to interfere substantially with [the victim's] personal liberty, and with the purpose of causing physical injury to [the victim]."

Defendant waived jury trial, and the case was tried to the court. After the close of the state's evidence, defendant made an MJOA on, *inter alia*, the first-degree kidnapping charge. Defendant argued:

"I think there are perhaps two different analyses that can be made as to that. As it relates to the events on the night of September 10th, early morning hours of September 11th, and testimony that he moved her from one room to another room, we would simply submit to the court that the facts testified to do not rise to a level where the court could find that he intended to substantially interfere with her personal liberty."

Defendant also argued that the victim's testimony that defendant had prevented her from approaching the door or windows in her apartment related only to events that had occurred after the assault and that "in order for it to be kidnapping in the first degree, the interference with personal liberty had to be for the purpose of causing physical injury to [the victim]," and, because there was no evidence that defendant intended to further physically harm the victim, the evidence that he intended to keep the victim away from the door and windows was not sufficient to satisfy the intent requirement for first-degree kidnapping.

The state responded:

"[D]efendant dragg[ed] her * * * to the bathroom, but also to the kitchen and then to the bedroom. * * * [S]he was dragged by her hair on all those occasions, against her will.

"Now, whether it's a substantial distance is not important. * * *

"Here, the fact that the defendant is taking her into the bathroom against her will—he not only takes her in there because he needs to clean the blood up so he won't get caught. He throws her down into the tub, causing more injury. He then drags her out to the living room, drags her to the kitchen, continues to assault her then. So he's assaulted her in the bathroom by dragging her, assaulting her back out in the living room with needles, and continued punching and kicking all over her body. And then it's not done, [he dragged] her by the hair to the bedroom. So the asportation element is clear. He is substantially interfering with her personal liberty."

The state additionally argued that defendant's movement of the victim was "not incidental to the assault." The state explicitly disclaimed any reliance on confinement as an alternative means of proving the act element. *See* ORS 163.225(1)(b) ("A person commits the crime of kidnapping in the second degree if, with intent to interfere substantially with another's personal liberty, and without consent or legal authority, the person * * * [s]ecretly confines the person in a place where the person is not likely to be found."). Nonetheless, relying on *State v. Mejia*, 348 Or 1, 227 P3d 1139 (2010), the state contended that the "two days of confinement" demonstrated defendant's intent to substantially interfere with the victim's liberty. *See Mejia*, 348 Or at 12 (concluding that, in the situation and context of that case, the evidence of the defendant's moving and restraining the victim in her own apartment for an hour and half "would be sufficient to allow a reasonable trier of fact to find that, apart from his various assaultive and menacing acts, defendant intended to interfere substantially with the victim's personal liberty").

The trial court summarily denied defendant's MJOA.

During closing arguments, defendant renewed his MJOA, relying on his previous arguments. The state remonstrated:

"He clearly has kidnapped her. He took her from—and I'm asking the court to look at the totality of this. Frankly, I think we could ask for several kidnappings: One from the living room to the bathroom, one from the bathroom back to the living room, into the kitchen, and then one from the living room to the bedroom. And on all occasions, she was injured, physically injured by this defendant. It was not incidental to the assault. He would beat her, take her to another place, beat her, and every single time he dragged her by her hair to get her to that location against her will. Clearly, his purpose in taking her to those locations was to continue the assaultive nature of his conduct.

"* * * * *

"His intent was clear to keep her there and confine her. And I again ask the court to look at the *Mejia* case, not for the subsection of kidnapping for confinement in a secret place, but to go towards the substantial step or his taking her and substantially interfering with her personal liberty. He wouldn't let her go for two days. The *Mejia* case was an hour and a half and they said that was sufficient. Two days is absolutely sufficient. And his intent was to interfere with her liberty. What else is he doing by not letting her walk to the windows, the doors, and get help? He confined her there to protect himself."

The trial court again denied defendant's motion, reasoning:

"With regard to the kidnapping, where you have someone dragging somebody by [her] hair around the apartment, throwing [her] head first into the bathtub, * * * causing a physical injury like that[,] * * * I think kidnapping has been satisfied."

On appeal, defendant correctly observes that, because "[t]he state charged defendant with the asportation theory of kidnapping in the first degree, ORS 163.235(1)(c)," the state was required "to establish that [defendant] moved the victim from one place to another with the intent to

interfere substantially with her personal liberty and with the purpose of causing her physical injury." Defendant contends that the state failed to adduce legally sufficient evidence that defendant "qualitatively change[d] the victim's location," and, further, the state failed to establish that any movement was not "incidental to the assaults." According to defendant, it follows that "the evidence was insufficient to establish that defendant took the victim from one place to another." Defendant further, and alternatively, argues that the state's evidence was insufficient to prove the requisite culpable mental state—that is, that defendant intended to "interfere substantially with [the victim's] personal liberty," ORS 163.225(1)—because the evidence did not establish that defendant "intended to confine the victim for a substantial period of time or intended to move the victim a substantial distance."

The state first remonstrates that defendant's argument regarding the asportation element is unpreserved:

"Before the trial court, defendant contended that the evidence was insufficient to show that he intended to interfere with the victim's personal liberty—the 'mental state' element of the offense—but he did not dispute that the evidence was sufficient to prove that he moved the victim from place to place—the 'act' element of the offense."

In any event, the state argues, the evidence at trial was legally sufficient to demonstrate that defendant had moved the victim "from one place to another" because, in the state's view, each room in the victim's apartment "was, in context, a 'qualitatively different' place." Specifically, the state contends that

"a rational [trier of fact] could conclude that the bathroom was 'qualitatively' different from the kitchen. That is, the bathroom served a specific and additional function in defendant's overall assault. In addition to being another place to assault the victim, the bathroom also served as a location—distinct from any other room in the residence—where defendant could clean the blood from the victim's body and clothing. Because the bathroom had a bathtub and shower, and consequently was able to serve a different and additional function than other rooms in the residence, it was 'qualitatively' different from other rooms in the residence."

For the reasons amplified below, we determine that defendant's challenge to the legal sufficiency of the state's proof of asportation is preserved. We further conclude, on the merits, that the state failed to adduce sufficient evidence to demonstrate that defendant moved the victim "from one place to another" within the meaning of ORS 163.225. Accordingly, the trial court erred in denying defendant's MJOA, and we reverse without addressing defendant's alternative contention as to the purported insufficiency of the state's proof of intent. *Accord State v. Sierra*, 349 Or 506, 518 n 9, 254 P3d 149 (2010), *adh'd to as modified on recons*, 349 Or 604, 247 P3d 759 (2011) ("Because we reverse defendant's second-degree kidnapping convictions on the ground that the state presented insufficient evidence as to the act element, we need not address the sufficiency of the evidence as to the intent element.").

We begin with the threshold issue of preservation. *See* ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court."). We agree with the state that defendant's argument before the trial court in support of his MJOA pertained *primarily* to the intent element of kidnapping. *See* 256 Or App at 526-27. Nevertheless, the state's responses—and the court's reasoning—set out above demonstrate that the parties and the court both understood that defendant's motion challenged the sufficiency of the evidence as to *both* the act and intent elements. *See State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000) (explaining that, in addition to preventing unfair surprise to the parties, the purpose of the preservation requirement is to permit the trial court to "to consider and correct the error immediately, if correction is warranted"). We conclude that defendant adequately raised and preserved his argument that the state's evidence was insufficient for the court to find that his actions constituted asportation.

We proceed to the merits. The Supreme Court most recently articulated what is required to demonstrate the act element of kidnapping by asportation in *Sierra*, 349 Or 506, which issued after the notice of appeal was filed in this

case, but before briefing. *Sierra* is not only instructive but, ultimately, dispositive.[4]

In *Sierra*, as pertinent to our analysis here, two victims were patrons at a truck stop restaurant. 349 Or at 509. Those two victims "heard a commotion" in the adjoining convenience store and entered through a door near the front of the store to investigate. *Id.* They found the defendant pointing a loaded crossbow at a store clerk, who was on his knees behind a counter near the back of the store. *Id.* at 509-10. Hoping to assist the clerk, one victim "attempted to divert [the] defendant's attention so that [the other victim] would be able to restrain" the defendant. *Id.* The defendant yelled at the victims to leave. *Id.* When they refused to leave, the defendant pointed the crossbow at them and directed them to move to the back of the store and kneel beside the clerk. *Id.* The victims did as they were instructed. *Id.* In relation to those acts, and with respect to those two victims, the defendant was convicted of second-degree kidnapping. We affirmed without opinion. *State v. Sierra*, 228 Or App 149, 206 P3d 1153 (2009).

On review, the parties' dispute centered on "the meaning of the act element of kidnapping by asportation." *Sierra*, 349 Or at 512. In resolving the issue, the Supreme Court examined *State v. Murray*, 340 Or 599, 136 P3d 10 (2006), and *State v. Walch*, 346 Or 463, 213 P3d 1201 (2009).

In *Murray*, the victim was sitting in the driver's seat of her car in a grocery store parking lot when the defendant opened the driver's side door, entered the car, pushed the victim into the passenger seat, and instructed her to get out.

---

[4] The parties both relied on *Mejia* in their arguments before the trial court. 348 Or 1. However, *Mejia* is inapposite to defendant's asportation argument, because, in *Mejia*, the Supreme Court expressly did not address the asportation/ act element of kidnapping. Rather, the Supreme Court's analysis there pertained exclusively to the intent element. *See* 348 Or at 5-6, 6 n 2 (noting that the defendant "did not renew in the Court of Appeals his argument to the trial court that there was insufficient evidence that he had moved the victim 'from one place to another,'" and, therefore, the Supreme Court did not address it). Although the asportation and intent elements may be related, *see, e.g., Mejia*, 348 Or at 11-12 (noting that the "'intent to interfere substantially with another's personal liberty[ ]' may be shown" by asportation or confinement), *Mejia*—in dispositive contrast with *Sierra*—does not speak to the meaning of movement "from one place to another." ORS 163.225(1)(a).

340 Or at 601-02. The victim exited through the passenger side door and the defendant drove away in her car. *Id.* The defendant was convicted of second-degree kidnapping, and we affirmed. *State v. Murray*, 200 Or App 732, 117 P3d 297 (2005). On review, the Supreme Court reversed. *Murray*, 340 Or 599. In so holding, the court determined that "[the] defendant's movement of the victim was insufficient to satisfy the act element of kidnapping by asportation because, even assuming that the movement of the victim from driver's seat to passenger's seat was place-to-place movement, that movement was incidental to defendant's substantive crime" of car theft. *Sierra*, 349 Or at 514 (citing *Murray*, 340 Or at 606).

In contrast, *Walch* "involved nonincidental movement 'from one place to another.'" *Sierra*, 349 Or at 515. There, in attempting to rob the victim, the defendant attacked her in a driveway, dragged her to a parked car, and lifted her into the open trunk of the car. *Walch*, 346 Or at 466. The Supreme Court, in affirming the defendant's conviction for first-degree kidnapping, concluded that the defendant had "moved the victim from one place (the open driveway) to a *qualitatively different*, more mobile and isolated place (the trunk of a car)." *Id.* at 476 (emphasis added). The court thus concluded that "the asportation element of the kidnapping statute ha[d] been satisfied." *Id.*

Against that precedential backdrop, the defendant in *Sierra* argued that, "as a general rule, movement within a single structure (such as a home, building, or car), including room-to-room movement, will not be movement to a qualitatively different place in terms of interference with a victim's liberty." 349 Or at 512. The state agreed "that the beginning place and ending place must be qualitatively different, but argue[d] that place-to-place movement requires only proof that the defendant moved the victim" to a more restrictive or isolated place. *Id.* (internal quotation marks omitted). Both parties recognized that "the state is not required to prove that defendant took the victim a substantial distance." *Id.* (citing *Walch*, 346 Or at 473).

After observing that "pinpointing the legislature's intended meaning of the word 'place' with precision has

proved * * * vexing," *id.* at 513, the Supreme Court explained that

> "a defendant can be said to have moved the victim from 'one place' to 'another' *only when the defendant changes the position of the victim such that, as a matter of situation and context, the victim's ending place is qualitatively different from the victim's starting place.*
>
> "Moreover, *Murray* and *Walch* identify an additional requirement contained within the act element: the taking must not be 'only incidental' to another crime."

*Id.* at 513-14 (emphasis added). The court observed that, under that standard, "*Murray* and *Walch* are consistent." *Id.* at 515.

Before applying that construct to the facts, the court in *Sierra* sought to

> "dispel any misconceptions that may persist as to the meaning [of] the phrase 'from one place to another' as it is used in the kidnapping statutes. First, because the wording selected by the legislature requires movement from one place to a second, distinct place, it generally is problematic to suggest or conclude that minimal movement that effectuates little change in the victim's position—such as, for example, movement requiring one to step to the side, or move from a standing position to a sitting or lying position—is movement 'from one place to another.' Second, because the asportation element is defined in terms of relative movement, the degree of force or threat used by a defendant to effectuate the victim's movement ordinarily is not relevant to a determination whether a victim has been 'taken from one place to another.' Third, the degree by which the movement in question increases defendant's control over the victim, or isolates the victim from the view of others, is relevant to the determination whether a defendant has moved a victim 'from one place to another' only to the extent that those considerations tend to demonstrate the qualitative difference between where the victim started ('from one place') and where the victim was as a result of the defendant's conduct ('another [place]'). *See Walch*, 346 Or at 482 (When defendant forced victim from a driveway outside her home into a car trunk, existence of car trunk is relevant 'not because it is a "secret" place * * * but because it was "another" "place"

to which defendant took the victim[.]').[6] However, because neither isolation nor control of the victim is required by the wording of ORS 163.225(1)(a), those considerations cannot be substituted for the ultimate inquiry whether the victim was moved from one place to another.

---

"[6] As we stated in *Walch*, 346 Or at 482 n 11, we again caution here that 'the asportation and confinement elements are not mutually exclusive.' Because, in this case, the state charged asportation and not confinement, there is no need to consider whether the evidence in this case would have supported a conviction under the confinement prong of ORS 163.225(1)."

*Id.* at 516.

Consistently with the foregoing construction, the Supreme Court in *Sierra* rejected the defendant's proposition that "movement of a victim within a single structure will *never* be place-to-place movement." *Id.* at 517 (emphasis in original). Instead, the court concluded that, in the particular "situation and context" of *Sierra*, the facts were insufficient to allow a rational trier of fact to conclude that the defendant moved the two victims "from one place to another." *Id.* That was so, the court explained, because "[t]he beginning location (inside a convenience store, near the front door) and the ending location (inside the same room, behind a * * * counter near the back of the room) of [the] defendant's contact with [the victims] are not 'qualitatively different' locations." *Id.* Accordingly, the court concluded that "the state introduced insufficient evidence to prove the two charges of kidnapping in the second degree." *Id.* at 518.

We return to this case. For purposes of our review, the issue reduces to whether, viewing the evidence in the light most favorable to the state, "as a matter of situation and context, the victim's ending place [was] qualitatively different from the victim's starting place." *Id.* at 513-14 (internal quotation marks omitted).

Here, the victim's "starting place" was the living room of her apartment. Defendant moved her from the living room to the kitchen, from the kitchen to the bathroom, back to living room, and ultimately down the hallway to the bedroom. 256

Or App at 524. To be sure, each of those rooms was—as the state emphasizes—*functionally* distinct, but *Sierra*, *Murray*, and *Walch* instruct us that generic functional distinctions do not establish the requisite "qualitative difference" *vis-à-vis* the commission of the crime of kidnapping. The hallmark of "qualitative difference" is whether the difference between the starting and ending places promotes or effectuates a substantial interference "with another's personal liberty." ORS 163.225(1). In the "situation and context" of this case, the functional differences among the rooms in the victim's apartment had no effect on the extent to which defendant interfered with the victim's personal liberty. *Accord State v. Gerlach*, 255 Or App 614, 619-20, 300 P3d 193 (2013) (analyzing ORS 163.225, for merger of conviction purposes, and observing that the gravamen of the crime of kidnapping is a defendant's substantial interference with another's personal liberty).

In that respect, we also note that the state adduced no evidence that, in moving the victim between rooms of her apartment, defendant intended or accomplished transporting the victim to a place where he could exert greater control over the victim or increase her isolation. *See Sierra*, 349 Or at 516 ("[T]he degree by which the movement in question increases defendant's control over the victim, or isolates the victim from the view of others, is relevant to the determination whether a defendant has moved a victim 'from one place to another' only to the extent that those considerations tend to demonstrate the qualitative difference between where the victim started ('from one place') and where the victim was as a result of the defendant's conduct ('another [place]').").

The state posits, nevertheless, that, "[b]ecause the bathroom had a bathtub and shower, and consequently was able to serve a different and additional function than other rooms in the residence, it was 'qualitatively different' from other rooms in the residence." Specifically, the state points to the fact that the bathroom "served as a location—distinct from any other room in the residence—where defendant could clean the blood from the victim's body and clothing." With respect, that is a *non sequitur* because, with respect to any restraint of the victim's personal liberty, the degree

of restraint was no different in the bathroom than at the "starting place," that is, in the living room.

Finally, the evidence here demonstrates that, during the course of the nearly seven-hour assault, defendant moved the victim in the course and in furtherance of the ongoing assault. The movement, thus, was "only incidental" to the assault. The assault ended when defendant and the victim fell asleep in the bedroom. *See* 256 Or App at 524-25. The state adduced no evidence that defendant moved the victim during the two days that defendant remained in the victim's apartment following the assault.

For the foregoing reasons, we conclude that the state introduced insufficient evidence for a rational trier of fact to determine that defendant moved the victim "from one place to another." ORS 163.225. Accordingly, the trial court erred in denying defendant's MJOA on the kidnapping charge.

Conviction for first-degree kidnapping reversed; remanded for resentencing; otherwise affirmed.