Argued and submitted December 28, 2012, conviction for first-degree kidnapping
reversed; remanded for resentencing; otherwise affirmed June 26, 2013

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DANYELLE LYNNE KINSLOW,
*Defendant-Appellant.*

Josephine County Circuit Court
10CR0107; A146208

304 P3d 801

Stephanie J. Hortsch, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Michael A. Casper, Deputy Solicitor General, argued the cause for respondent. On the brief were John R. Kroger, Attorney General, Anna M. Joyce, Solicitor General, and Rebecca M. Johansen, Assistant Attorney General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

**SCHUMAN, P. J.**

Defendant and the victim were using methamphetamine at defendant's house when defendant was angered by a text message she read on the victim's phone. Defendant summoned to the house an accomplice who, along with defendant, assaulted the victim at the house over the course of a day and a half. After the victim escaped, defendant was charged with ten different offenses, including first-degree kidnapping and various drug-related offenses. Defendant was convicted on all counts and now appeals. On appeal, she argues that (1) the trial court erred in denying her motion for a judgment of acquittal on the kidnapping charge, because she did not move the victim from "one place to another," ORS 163.225(1)(a); (2) the trial court erred in denying her motions for judgments of acquittal on the charges of manufacturing, delivering, and possessing methamphetamine, because the state presented insufficient evidence that those offenses were "commercial drug offenses" within the meaning of ORS 475.900; and (3) the trial court erroneously admitted a laboratory report that identified substances found at the house as methamphetamine, because the author of that report did not testify. We reverse defendant's kidnapping conviction, remand for resentencing, and otherwise affirm.

Because defendant challenges the trial court's denial of her motions for judgments of acquittal, we state the underlying facts in the light most favorable to the state. *State v. Cervantes*, 319 Or 121, 125, 873 P2d 316 (1994). On a Saturday evening, defendant and the victim were using methamphetamine in defendant's house, which was one half of a duplex. At some point, defendant read text messages on the victim's phone, including a message in which the victim referred to spanking defendant's four-year-old son. After reading the text, defendant was angered and called one of her acquaintances, Warren, and asked him to come to the house. Defendant offered to pay Warren to beat up the victim, and Warren agreed to assault the victim in exchange for a pair of shoes and methamphetamine.

When Warren arrived, he walked through the front door of defendant's house and hit the victim in the living room. He told the victim to empty his pockets onto a bed in

the living room, and the victim placed his cell phone and some cash on the bed. Warren then began calling the victim a child molester and hit and stomped on the victim's face. After approximately 20 minutes, Warren picked up a studded belt and used it to beat the victim. By that point, the assault had moved to the kitchen area, which was connected to the living room. Defendant remained present throughout the beating, standing in her living room.

After a short break, Warren began throwing things at the victim, striking him in the eye with a cigarette lighter and a pen. He also sprayed bleach in the victim's face while the victim was sitting on a couch. After the bleach incident, Warren "pretended like everything was fine," offering the victim water and a cigarette, and they smoked cigarettes in the living room. At some point that night, defendant also picked up a belt and threatened to punch the victim with it.

The following morning, Warren resumed the beatings. Warren and defendant left the victim alone in the house for a few hours on Sunday afternoon, but the victim was too scared and exhausted to escape. The victim awoke to find defendant back in the house. He asked defendant whether he could leave the house, and defendant told him to wait until Warren returned.

On Sunday evening, Warren returned and began hitting the victim again. Warren sprayed a bottle of fabric deodorizer in the victim's face, threw the bottle at him, and sat on the victim's chest. Also that evening, Warren said to the victim, "Come here, I want to talk to you." The victim reluctantly followed Warren to the bathroom, where Warren proceeded to strangle the victim with a belt. When the victim was about to pass out, Warren loosened the belt and then retightened it. He also held a knife to the victim's throat and slightly cut his neck. Defendant, meanwhile, was in the living room. She could not see into the bathroom from the living room, but she could hear what was happening.

That same evening, Warren and the victim went outside to smoke a cigarette. Warren told the victim "to stand in the dark so nobody would see [him]" and that he

"better not run." Warren stood within an arm's reach of the victim while they were outside.

At some point during the ordeal, defendant called someone on the phone to find a cabin where Warren could take the victim. Warren, meanwhile, told the victim that, at the cabin, he would either kill him or break his hands, tie him up, and leave him there.

The victim eventually passed out again from exhaustion. When he woke on Monday morning, Warren was gone and defendant and her son were asleep on the bed in the living room. The victim walked out the front door and went to a friend's house, where he was encouraged to go to the hospital. The victim went to the hospital, and police were notified of his injuries.

The following week, police executed a search warrant at defendant's home, where they discovered a "dirty" scale, multiple Ziploc baggies, a methamphetamine bong, a snort tube, and drug records. Defendant admitted to police that she had sold methamphetamine; in fact, drug users were present and purchasing drugs from defendant at times when the victim was being assaulted. When searching defendant's vehicle, which was parked at the house, police found the victim's cell phone.

Defendant subsequently was charged with first-degree kidnapping, first-degree robbery, unlawful use of a weapon, fourth-degree assault, strangulation, menacing, manufacture of methamphetamine, delivery of methamphetamine, possession of methamphetamine, and child neglect. The trial court granted a motion for a judgment of acquittal on the first-degree robbery charge and instructed the jury on the lesser-included offense of third-degree robbery. Defendant was convicted, as an accomplice or principal, on all counts.

On appeal, defendant advances five assignments of error. In her first assignment, she argues that the trial court erred in denying her motion for a judgment of acquittal on the kidnapping charge, because the evidence was legally insufficient to establish the asportation element of the crime—that is, that the victim was taken "from one place to another,"

as alleged in the indictment.[1] In defendant's view, the parts of the house—the living room area, the kitchen area, and the bathroom—were not qualitatively different places, and any movement among those areas merely was incidental to other crimes (assault, menacing, and strangulation). *See State v. Sierra*, 349 Or 506, 513, 254 P3d 149 (2010), *adh'd to as modified on recons*, 349 Or 604, 247 P3d 759 (2011) ("[A] defendant can be said to have moved the victim from 'one place' to 'another' only when the defendant changes the position of the victim such that, as a matter of situation and context, the victim's ending place is qualitatively different from the victim's starting place."). The state responds that, when Warren "moved the victim from the living room to the bathroom, the destination was, in context, a 'qualitatively different' place."[2]

The parties' competing asportation arguments echo those that we recently addressed in *State v. Opitz*, 256 Or App 521, 301 P3d 946 (2013). In *Opitz*, the defendant argued that his movement of the victim between rooms in a single apartment was not the type of movement "from one place to another" that is required for the crime of kidnapping. We began our analysis by discussing *Sierra*, the Supreme Court's most recent decision on the subject of asportation. Because that discussion is equally instructive here, we reproduce part of it:

> "In *Sierra*, as pertinent to our analysis here, two victims were patrons at a truck stop restaurant. 349 Or at 509. Those two victims 'heard a commotion' in the adjoining convenience store and entered through a door near the front of the store to investigate. *Id.* They found the defendant pointing a loaded crossbow at a store clerk, who was on his knees behind a counter near the back of the store. *Id.* at 509-10. Hoping to assist the clerk, one victim 'attempted to divert [the] defendant's attention so that [the other victim] would

---

[1] The state did not allege, and does not argue on appeal, that the evidence was sufficient to prove kidnapping on the ground that Warren or defendant had "[s]ecretly confine[d] the [victim] in a place where the person is not likely to be found." ORS 163.225(1)(b). We therefore do not address that issue.

[2] Although there is evidence that the victim was allowed outside the house to smoke a cigarette, and was warned to stay out of sight during that time, 257 Or App at 298-99, the state has never suggested that the movement to outside the house, or from outside back inside, was sufficient to constitute kidnapping.

be able to restrain' the defendant. *Id.* The defendant yelled at the victims to leave. *Id.* When they refused to leave, the defendant pointed the crossbow at them and directed them to move to the back of the store and kneel beside the clerk. *Id.* The victims did as they were instructed. *Id.* In relation to those acts, and with respect to those two victims, the defendant was convicted of second-degree kidnapping. We affirmed without opinion. *State v. Sierra*, 228 Or App 149, 206 P3d 1153 (2009).

"On review, the parties' dispute centered on 'the meaning of the act element of kidnapping by asportation.' *Sierra*, 349 Or at 512. In resolving the issue, the Supreme Court examined *State v. Murray*, 340 Or 599, 136 P3d 10 (2006), and *State v. Walch*, 346 Or 463, 213 P3d 1201 (2009).

"* * * * *

"Against that precedential backdrop [of *Murray* and *Walch*], the defendant in *Sierra* argued that, 'as a general rule, movement within a single structure (such as a home, building, or car), including room-to-room movement, will not be movement to a qualitatively different place in terms of interference with a victim's liberty.' 349 Or at 512. The state agreed 'that the beginning place and ending place must be qualitatively different, but argue[d] that place-to-place movement requires only proof that the defendant moved the victim' to a more restrictive or isolated place. *Id.* (internal quotation marks omitted). Both parties recognized that 'the state is not required to prove that defendant took the victim a substantial distance.' *Id.* (citing *Walch*, 346 Or at 473).

"* * * * *

"* * * [T]he Supreme Court in *Sierra* rejected the defendant's proposition that 'movement of a victim within a single structure will *never* be place-to-place movement.' *Id.* at 517 (emphasis in original). Instead, the court concluded that, in the particular 'situation and context' of *Sierra*, the facts were insufficient to allow a rational trier of fact to conclude that the defendant moved the two victims 'from one place to another.' *Id.* That was so, the court explained, because '[t]he beginning location (inside a convenience store, near the front door) and the ending location (inside the same room, behind a * * * counter near the back of the room) of [the] defendant's contact with [the victims] are not "qualitatively

different" locations.' *Id.* Accordingly, the court concluded that 'the state introduced insufficient evidence to prove the two charges of kidnapping in the second degree.' *Id.* at 518."

*Opitz*, 256 Or App at 531-34.

We ultimately distilled the following principle from *Sierra*: "For purposes of our review, the issue reduces to whether, viewing the evidence in the light most favorable to the state, 'as a matter of situation and context, the victim's ending place [was] qualitatively different from the victim's starting place.'" *Id.* at 534 (quoting *Sierra*, 349 Or at 513-14). Then, turning to the facts in *Opitz*, we proceeded to answer that question in the negative:

> "Here, the victim's 'starting place' was the living room of her apartment. Defendant moved her from the living room to the kitchen, from the kitchen to the bathroom, back to living room, and ultimately down the hallway to the bedroom. * * * To be sure, each of those rooms was—as the state emphasizes—*functionally* distinct, but *Sierra, Murray,* and *Walch* instruct us that generic functional distinctions do not establish the requisite 'qualitative difference' *vis-à-vis* the commission of the crime of kidnapping. The hallmark of 'qualitative difference' is whether the difference between the starting and ending places promotes or effectuates a substantial interference 'with another's personal liberty.' ORS 163.225(1). *In the 'situation and context' of this case, the functional differences among the rooms in the victim's apartment had no effect on the extent to which defendant interfered with the victim's personal liberty. Accord State v. Gerlach*, 255 Or App 614, 619-20, 300 P3d 193 (2013) (analyzing ORS 163.225, for merger of conviction purposes, and observing that the gravamen of the crime of kidnapping is a defendant's substantial interference with another's personal liberty).
>
> "In that respect, we also note that the state adduced no evidence that, in moving the victim between rooms of her apartment, defendant intended or accomplished transporting the victim to a place where he could exert greater control over the victim or increase her isolation. * * *
>
> "The state posits, nevertheless, that, '[b]ecause the bathroom had a bathtub and shower, and consequently was able to serve a different and additional function than other

rooms in the residence, it was "qualitatively different" from other rooms in the residence.' Specifically, the state points to the fact that the bathroom 'served as a location—distinct from any other room in the residence—where defendant could clean the blood from the victim's body and clothing.' With respect, that is a *non sequitur* because, with respect to any restraint of the victim's personal liberty, the degree of restraint was no different in the bathroom than at the 'starting place,' that is, in the living room.

"Finally, the evidence here demonstrates that, during the course of the nearly seven-hour assault, [the] defendant moved the victim in the course and in furtherance of the ongoing assault. The movement, thus, was 'only incidental' to the assault. The assault ended when [the] defendant and the victim fell asleep in the bedroom. \* \* \*. The state adduced no evidence that [the] defendant moved the victim during the two days that [the] defendant remained in the victim's apartment following the assault."

*Opitz*, 256 Or App at 534-36 (first emphasis in original; second emphasis added).

For those reasons, we concluded in *Opitz* that "the state introduced insufficient evidence for a rational trier of fact to determine that [the] defendant moved the victim 'from one place to another.' ORS 163.225," and that the trial court erred in denying the defendant's motion for a judgment of acquittal on the kidnapping charge. *Id.* at 536.

In light of *Opitz* and the cases discussed therein, we conclude that the state failed to adduce sufficient evidence to prove the crime of kidnapping in this case. As described above in greater detail, defendant's accomplice, Warren, moved the victim from the living room and kitchen area, where he assaulted the victim, to the bathroom, where he then strangled the victim and held a knife to his throat. Given the "situation and context"—that is, a day-and-a-half-long assault in defendant's home—there were no "qualitative differences" between the various rooms of the small house. Whatever functional differences between the living room, kitchen, and bathroom, there was nothing about any one of those rooms that, on these particular facts, increased Warren's or defendant's control over the victim or further

isolated the victim. Contrary to the state's suggestion, there is no evidence in the record that would allow a trier of fact to conclude that, when the victim was taken into the bathroom, he was "away from whoever else might be there to see what was going on." The state did not offer any evidence that the bathroom door was even closed during the assault there; in fact, the only evidence on that point was that a person in the living room could hear whatever was occurring in the bathroom. Thus, as was the case in *Opitz*, "the degree of restraint was no different in the bathroom than at the 'starting place,' that is, in the living room."[3] *Id.* at 535-36.

Because the state failed to prove that the victim was taken "from one place to another" for purposes of ORS 163.225(1)(a), the trial court should have granted defendant's motion for a judgment of acquittal on the charge of first-degree kidnapping. We therefore reverse defendant's conviction on that charge.[4]

In her second through fourth assignments of error, defendant argues that the trial court erred in denying her motions for judgments of acquittal on three commercial drug offenses (possession of methamphetamine, delivery of methamphetamine, and manufacture of methamphetamine). She reprises the argument she made below—which the trial court rejected—that her possession of the victim's cell phone was insufficient to elevate her drug offenses to "commercial drug offenses" under ORS 475.900(1)(b). Under that statute, "possession, delivery or manufacture is a commercial drug offense for purposes of this subsection if it *is accompanied by* at least three of the following factors," including "(F) The offender was in possession of stolen property[.]" (Emphasis added.) In defendant's view, her possession of the victim's cell phone was related only to the assault of the victim, not to her drug offenses; possession of stolen property, she

_____

[3] The state also posits that, while in the bathroom, the victim was further from the front door of defendant's house, which "made it more difficult for the victim to escape the house." Suffice it to say that the record does not support an inference that the distance between the bathroom and front door effectuated any increased interference with the victim's liberty.

[4] Because we agree with defendant that the state did not prove that the rooms of the house were qualitatively different, we need not address defendant's contention that any asportation was merely incidental to the crimes of assault, strangulation, and unlawful use of a weapon.

argues, turns drug offenses into "commercial drug offenses" only if the possession of that property is "somehow related to the drug offense and not just exist[ing] contemporaneously with it."

We have previously rejected a similar argument regarding the factors "accompanying" a drug offense. In *State v. Moore*, 172 Or App 371, 382-83, 19 P3d 911, *rev den*, 332 Or 250 (2001), the defendant contended that, "even if the state presented sufficient evidence to establish three subcategory factors, it nevertheless did not prove that the factors 'accompanied' the drug offenses," as required by ORS 475.900(1)(b).[5] Specifically, the defendant in *Moore* argued:

> "'[T]he legislature was not just listing factors which would increase a defendant's sentence if they happened to exist with a drug offense as if by coincidence. Instead, it was listing factors which would indicate that the drug offense was something more than just a singular episode, that it was part of a larger commercial enterprise. It was termed a 'commercial drug offense.' *For the factors to indicate that larger enterprise, they must somehow be related to the drug offense and not just exist contemporaneously with it.*'"

172 Or App at 382 (emphasis in *Moore*). We found that argument unpersuasive, explaining:

> "To 'accompany' means 'to exist or occur in conjunction with.' *State v. Norris*, 40 Or App 505, 508, 595 P2d 1261, *rev den*, 287 Or 355 (1979). Here, officers found the track lighting in the growing room. Dons, acting as a guard, equipped with camera and monitor, defended the operation with deadly force. Finally, the structural modifications directly facilitated the operation. *All three factors occurred or existed in conjunction with, and thus accompanied, the drug offenses for which defendant was convicted.* We conclude that the state presented sufficient evidence that the factors accompanied the drug offenses."

172 Or App at 382-83 (emphasis added).

"[W]e do not lightly overrule our own statutory interpretations. Ordinarily, we regard them as binding precedent

---

[5] When *Moore* was decided, the statute was codified as ORS 475.996(1)(b). In 2005, ORS 475.996 was renumbered by Legislative Counsel as ORS 475.900, but the relevant text is identical.

unless they are plainly wrong." *Aguilar v. Washington County*, 201 Or App 640, 648, 120 P3d 514 (2005), *rev den*, 340 Or 34 (2006). In this case, defendant has not persuaded us that our earlier interpretation of the statute was wrong, let alone "plainly wrong." *See State v. Cam,* 255 Or App 1, 9, 296 P3d 578, *adh'd to as modified on recons*, 256 Or App 146, 300 P3d 208 (2013) (following *Moore* and explaining that the "factors listed in ORS 475.900 need not relate to the specific underlying drug offense. * * * There is no requirement of a nexus between the underlying drug offense and the listed factors."). We therefore adhere to that interpretation and consider whether the state presented evidence from which a trier of fact could find that the stolen cell phone "occurred or existed in conjunction with" defendant's drug offenses.

The state offered proof that defendant stole the victim's cell phone during the course of the assault at her home and possessed that phone in her vehicle, which was parked outside her house. Thus, the stolen property was possessed by the same individual, defendant, who was also possessing, delivering, and manufacturing methamphetamine, and she possessed that stolen property in a vehicle directly connected to the drug site, her residence. Those facts were sufficient to allow a jury to find that the stolen property existed in conjunction with defendant's drug offenses and was, along with other factors—namely, drug scales, ORS 475.900(1)(b)(D), and drug transaction records, ORS 475.900(1)(b)(E)—part of a commercial drug operation. The trial court did not err in denying defendant's motions for judgments of acquittal on the charges of possessing, delivering, and manufacturing methamphetamine.

In her final assignment, defendant argues that the trial court erred in admitting into evidence a crime laboratory report that identified a substance found in defendant's home as methamphetamine. The report was admitted without requiring its author to testify, because defendant received a certified copy of the report but did not file a written objection to the report at least 15 days before trial. *See* ORS 475.235(4) ("Notwithstanding any other provision of law, in all prosecutions in which an analysis of a controlled

substance or sample was conducted, a certified copy of the analytical report signed by the director of a state police forensic laboratory or the analyst or forensic scientist conducting the analysis shall be admitted as prima facie evidence of the results of the analytical findings unless the defendant has provided notice of an objection in accordance with subsection (5) of this section."); ORS 475.235(5) ("If the defendant intends to object at trial to the admission of a certified copy of an analytical report as provided in subsection (4) of this section, not less than 15 days prior to trial the defendant shall file written notice of the objection with the court and serve a copy on the district attorney.").

According to defendant, ORS 475.235(4) and (5) place "the burden on the defendant to enforce her confrontation right," thereby violating state and federal constitutional protections. *See Melendez-Diaz v. Massachusetts*, 557 US 305, 129 S Ct 2527, 174 L Ed 2d 314 (2009) (describing Sixth Amendment right to confront witnesses who prepare laboratory reports for use in criminal prosecutions, and explaining that the state cannot shift the burden to the defendant to subpoena the lab analyst); *State v. Birchfield*, 342 Or 624, 631-32, 157 P3d 216 (2007) (holding that "the trial court's admission of the laboratory report without requiring the state to produce at trial the criminalist who prepared the report or to demonstrate that the criminalist was unavailable to testify violated defendant's right to confront the witness against him under Article I, section 11, of the Oregon Constitution").

We have previously rejected an argument under the Sixth Amendment that "the provisions of ORS 475.235(4) and (5) unconstitutionally shift the burden to defendant by requiring defendant, rather than the state, to secure the testimony of a state's witness," *State v. Glass*, 246 Or App 698, 700, 268 P3d 689 (2011), *rev den*, 352 Or 25 (2012), and we see no reason to revisit that question. *See id.* at 701 (holding that "ORS 475.235 is precisely the type of notice-and-demand statute of which the Court explicitly approved in *Melendez-Diaz*," and that the defendant was "incorrect that its requirement that he raise his objection before trial violates the Confrontation Clause"). Accordingly, we reject

defendant's Sixth Amendment challenge to the admission of the laboratory report under ORS 475.235(4) and (5).

We likewise reject defendant's challenge under the state constitution. In *Birchfield*, the Supreme Court held that, under Article I, section 11, the state cannot require the defendant to secure the attendance of the criminalist who prepared the laboratory report. At the same time, the court sanctioned the very procedure that is now set forth in ORS 475.235(4) and (5). The court explained:

> "It is the state that seeks to adduce the evidence as to which the criminalist will testify. The defendant has a constitutional right to confront the proponent of that evidence, the criminalist. *The legislature may require the defendant to assert that right or to design a procedure to determine whether the defendant agrees that a written report will suffice.* But, to require that a defendant do more changes the right to insist that the state present evidence the 'old-fashioned way' into an obligation to procure a witness for the state."

342 Or at 631 (emphasis added).

ORS 475.235(4) and (5) do not impermissibly shift the burden to a defendant to procure a criminalist but, rather, set forth a constitutionally permissible process for determining whether the defendant intends to object to the written report. Having failed to follow that procedure in this case, defendant cannot now challenge the admission of the laboratory report on confrontation grounds.

Conviction for first-degree kidnapping reversed; remanded for resentencing; otherwise affirmed.