Argued and submitted May 11; convictions on Counts 2 and 3 reversed, remanded for resentencing, otherwise affirmed November 30, 2016; petitions for review denied March 30, 2017 (361 Or 311)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MICHAEL ALLEN EASTMAN,
*Defendant-Appellant.*

Lane County Circuit Court
201214501; A156868

385 P3d 1182

Bear Wilner-Nugent argued the cause and filed the briefs for appellant.

Michael A. Casper, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.

**GARRETT, J.**

Defendant was convicted of three counts of first-degree rape, ORS 163.375 (Counts 1, 2, and 3), and one count of first-degree kidnapping, ORS 163.235 (Count 4). Defendant appeals his judgment of conviction on a number of grounds. Defendant first contends that the trial court erred in denying his motion for judgment of acquittal (MJOA) on two of the three counts of rape because the evidence at trial supported a guilty verdict on only one count of that crime. Alternatively, defendant argues that the trial court should have merged the guilty verdicts on the three counts of rape into a single conviction under ORS 161.067.[1] Defendant also assigns error to the denial of his MJOA on the single count of kidnapping, arguing that the evidence was insufficient to establish the elements of that crime. We reject without written discussion defendant's assignment of error challenging an evidentiary ruling made by the trial court. Finally, defendant challenges the trial court's imposition of consecutive sentences on his rape and kidnapping convictions. As explained below, we conclude that the trial court erred in denying the MJOA with respect to two of defendant's first-degree rape charges because the state failed to present evidence that more than one rape occurred. Accordingly, we reverse defendant's convictions on Counts 2 and 3 and remand for resentencing. We otherwise affirm.

We begin with defendant's contention that the trial court erred in denying his motions for judgment of acquittal. "In reviewing the denial of an MJOA, we view the facts in the light most favorable to the state to determine whether a rational trier of fact could find each element of the charged offense beyond a reasonable doubt." *State v. Opitz*, 256 Or App 521, 523, 301 P3d 946 (2013). We state the facts consistently with that standard.

---

[1] ORS 161.067(3) provides, in relevant part:

"When the same conduct or criminal episode violates only one statutory provision and involves only one victim, but nevertheless involves repeated violations of the same statutory provision against the same victim, there are as many separately punishable offenses as there are violations, except that each violation, to be separately punishable under this subsection, must be separated from other such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent."

Defendant and the victim were both homeless and did not know one another. The victim testified that she had set up camp in a field and was settling in to sleep when defendant approached her and told her that he was going to rape her. Defendant was wearing a bandana around his face and claimed that he had a gun or a knife. Defendant ripped off the victim's clothing and repeatedly hit her in the face while she screamed and attempted to fight back. After about 10 or 15 minutes, the victim asked defendant for some water. Defendant dragged her by her hair to a nearby campsite and allowed her to drink from a water bottle. The attack continued there and, after some time, defendant dragged the victim by her hair to another campsite, located at the bottom of a small, wooded ravine. Once there, defendant positioned the victim on her hands and knees and forcibly penetrated her vaginally from behind with his penis. The victim testified that penetration continued for a period of "up to five minutes." During that time, the victim pulled away from defendant, causing his penis to slip out of her vagina. The victim testified that this happened approximately "11 or 12" times; each time, however, defendant was able to pull the victim back and reinsert his penis. Detective Hall, who interviewed the victim at the hospital on the night of the attack, testified that the victim told him that she would "lunge forward and lay flat on the blanket causing [defendant's] penis to come out of her body." When this occurred, defendant would beat her, pull her back onto her hands and knees, and continue to rape her. Hall testified that the victim told him that this occurred "about 15 times" over the course of approximately eight to 10 minutes. Eventually, police responded to reports of the victim's screams. Defendant fled the scene, but police apprehended him the next day.

Defendant was charged by indictment with three, identically worded counts of first-degree rape, ORS 163.375(1)(a).[2] The indictment also alleged that defendant had committed first-degree kidnapping, which is defined in ORS 163.235 as an aggravation of second-degree kidnapping, ORS 163.225. As relevant here, ORS 163.225(1) provides:

---

[2] ORS 163.375(1)(a) provides that "[a] person who has sexual intercourse with another person commits the crime of rape in the first degree if," among other things, "[t]he victim is subjected to forcible compulsion by the person[.]"

> "A person commits the crime of kidnapping in the second degree if, with intent to interfere substantially with another's personal liberty, and without consent or legal authority, the person:

> "(a)   Takes the person from one place to another; or

> "(b)   Secretly confines the person in a place where the person is not likely to be found."

Defendant was charged under the asportation theory of kidnapping set out in ORS 163.225(1)(a).[3]

Defendant waived jury trial, and the state tried his case to the court. At the close of the state's evidence, defendant moved for a judgment of acquittal on two of the rape counts and the kidnapping count. As to the rape charges, defendant argued that the state's evidence was insufficient to support a guilty verdict for more than a single count of first-degree rape:

> "[T]he state's best case scenario here is that they have proved one rape. They don't have two, and they don't have three—just like in an assault conviction you don't get an assault conviction with every punch thrown, you don't get a rape conviction every time you re-insert a penis."

The state responded that the evidence was sufficient to support multiple guilty verdicts for rape based on the fact that the victim was able to pull away from defendant a number of times, causing his penis to slip out of her vagina:

> "Once his penis comes out of [the victim], the rape has stopped, and the defendant made a separate decision to physically assault her by beating her, and then to rape her again. I would suggest that those are separate criminal acts that the defendant did not have to—they aren't just one continuous act by the defendant.

> "So there can be multiple rape convictions where the victim is able to escape from the defendant, and the defendant decides, I'm going to rape you again, basically."

---

[3] Count 4 of the indictment alleged that "[t]he defendant *** did unlawfully and knowingly, without consent or legal authority, take [the victim] *from one place to another*, with the intent to interfere substantially with the personal liberty of [the victim], and with the purpose of causing physical injury to [the victim][.]"

The trial court agreed with the state and denied defendant's MJOA on the first-degree rape charges.[4]

With respect to kidnapping, defendant argued that there was insufficient evidence that he took the victim "from one place to another" as required under ORS 163.225(1)(a). Defendant's primary contention was that neither the second campsite nor the campsite located in the ravine was a qualitatively different "place" from where he initially apprehended the victim. Alternatively, defendant argued that his actions in dragging the victim between campsites were merely "incidental" to the commission of the rape and, therefore, were insufficient to support the entry of a separate guilty verdict for kidnapping. The trial court rejected both of defendant's arguments:

> "I do find that there is sufficient asportation of the victim to a qualitatively different place. I agree with [the state's] analysis, in that, the place that the victim was dragged forcibly by the hair to, from one to one to one, but the end result place down within the ravine was a hidden place versus an open field place.
>
> "I think, in this case, that makes it significantly different, as opposed to where the victim had originally been camping in the field. Also, I do find it was not incidental to the rape, the asportation, *per se*, was not incidental to the rape. I, again, agree that it was to isolate the victim in a place where she would less likely be heard, where he would have more privacy, so that he would be less likely to

---

[4] The trial court's decision appears to have been informed by merger principles—*i.e.*, whether repeated violations of the same statute were separated by a "sufficient pause" to afford the defendant an opportunity to renounce his criminal intent. ORS 161.067(3). In some instances, the existence of a pause or interruption between multiple criminal acts may be instructive to the ultimate determination of whether the evidence was sufficient for a factfinder to find numerous, distinct violations of the crime. We note, however, that the ultimate question of whether a defendant is entitled to a judgment of acquittal on any particular count is distinct from the legal question of whether that defendant's guilty verdicts must merge under ORS 161.067. The former pertains to the *sufficiency of the state's evidence* to support a conviction, whereas the latter concerns the *legal effect* that must be given to the factfinder's determination on each count. *State v. Betnar*, 214 Or App 416, 431, 166 P3d 554 (2007); *see also State v. Link*, 346 Or 187, 202, 208 P3d 936 (2009) ("The question whether a person is guilty as charged has an independent significance that cannot be foreclosed by later merger. Merger presumes the validity of the convictions being merged; acquittals do not merge with convictions.").

be apprehended and more likely to get away with his criminal intent."

The trial court denied defendant's motion and, at the conclusion of the bench trial, found defendant guilty on all charges.

At sentencing, defendant argued that his three guilty verdicts for first-degree rape must merge into a single conviction under ORS 161.067(3) and asked the court to impose concurrent sentences. The trial court rejected defendant's merger argument and sentenced defendant to serve consecutive sentences on all four convictions as permitted by ORS 137.123(5).[5] Consistently with that statute, the trial court found that defendant's three convictions for rape were "not merely incidental violations" of the first-degree rape statute but, rather, indicated his "willingness to commit more than one criminal offense." ORS 137.123(5)(a). The court made an identical finding with respect to defendant's kidnapping conviction. Additionally, the court found that, in violating the kidnapping statute, defendant "caused or created a risk of causing greater or qualitative[ly] different loss, injury or harm to the victim" than by violating the rape statute. ORS 137.123(5)(b). Defendant was sentenced as a dangerous offender under ORS 161.737 to a total aggregate sentence of 120 years' incarceration.

On appeal, the parties generally repeat their arguments made to the trial court. We first address the rape convictions.

---

[5] ORS 137.123(5) provides:

"The court has discretion to impose consecutive terms of imprisonment for separate convictions arising out of a continuous and uninterrupted course of conduct only if the court finds:

"(a) That the criminal offense for which a consecutive sentence is contemplated was not merely an incidental violation of a separate statutory provision in the course of the commission of a more serious crime but rather was an indication of defendant's willingness to commit more than one criminal offense; or

"(b) The criminal offense for which a consecutive sentence is contemplated caused or created a risk of causing greater or qualitatively different loss, injury or harm to the victim or caused or created a risk of causing loss, injury or harm to a different victim than was caused or threatened by the other offense or offenses committed during a continuous and uninterrupted course of conduct."

Defendant was convicted of three counts of first-degree rape under ORS 163.375(1)(a), which provides that "[a] person who has sexual intercourse with another person commits the crime of rape in the first degree if," among other things, "[t]he victim is subjected to forcible compulsion by the person[.]" As noted, we review the denial of an MJOA to determine whether the record contains evidence from which a rational factfinder, drawing all reasonable inferences in the light most favorable to the state, could find that all elements of the crime were proven beyond a reasonable doubt. *State v. Howe*, 273 Or App 518, 521, 359 P3d 483 (2015). Thus, properly framed, the issue reduces to whether the state presented sufficient evidence to allow a reasonable trier of fact to find that defendant subjected the victim to three separate acts of sexual intercourse by forcible compulsion. We conclude that it did not.

The state charged defendant with three, identically worded counts of first-degree rape:

"The defendant, on or about July 11, 2012, in Lane County, Oregon, did unlawfully and knowingly, by forcible compulsion, engage in sexual intercourse with [the victim];

"The State further alleges that during the course of the above-described offense, the defendant caused or threatened to cause serious physical injury;

"The State further alleges that during the course of the above-described offense, the defendant used or threatened to use a weapon[.]"

As it did below, the state argues that the evidence supports multiple guilty verdicts for rape because defendant penetrated the victim multiple times. The state does not differentiate among the acts of insertion and reinsertion that the victim described; that is, the state does not identify the three that are distinctive enough to serve as the predicates for the three rape counts. Rather, the state's position is a categorical one: Defendant committed a separate rape each time that he reinserted his penis after the victim had "pulled away," no matter how briefly.

"Sexual intercourse" is defined in ORS 163.305(7) as having "its ordinary meaning" and as occurring "upon

any penetration, however slight[.]" The state's argument that defendant committed a rape each time he reinserted his penis is problematic in light of the evidence here, which is silent as to the duration of any pause between when the victim pulled away and when defendant penetrated her again. The record indicates, however, that the encounter was one continuous struggle; the victim repeatedly lunged forward and lay down on her stomach, but there is no evidence that she ever got away from defendant or that the attack ceased. Given the number of acts of reinsertion in the span of just a few minutes, it is clear that each time that the victim lunged forward, reinsertion must have occurred mere moments later. The state acknowledges that the record suggests that the interruptions in defendant's conduct were "brief," but, as noted, rests on the assertion that a new rape occurred each time defendant reinserted his penis.

The difficulty with the state's position is that it is inconsistent with the ordinary meaning of "sexual intercourse." For the state to prevail, we would have to conclude that an ordinary person would understand two people to have engaged in a distinct act of vaginal sexual intercourse every single time that the penis, having initially penetrated the vagina, is removed (accidentally or intentionally) and then reinserted. We believe that an ordinary person, on the contrary, would understand a single act of sexual intercourse to include the possibility of penetration, removal, and reinsertion of the penis multiple times. Thus, the mere fact that the penis is removed and reinserted, without more, does not establish that a *new* act of "sexual intercourse" has occurred.

To be clear, we do not mean to cast doubt on the proposition that multiple acts of rape can occur in a span of a few minutes. But the state must present evidence sufficient to permit a finding that one act of forcible sexual intercourse ended and another began. In this case, the evidence, when viewed in the light most favorable to the state, establishes only that defendant's penis was removed and reinserted multiple times without any pause in defendant's effort to vaginally penetrate the victim—something that is consistent with a single act of sexual intercourse. Because the state therefore proved only a single count of rape, the

trial court erred in denying defendant's motion for judgment of acquittal on the other two counts of rape.

In his second assignment of error, defendant contends that the trial court erred in denying his MJOA on the kidnapping charge. Defendant reprises the arguments that he made below. First, defendant contends that the state failed to adduce sufficient evidence of the asportation element of ORS 163.225(1)(a)—*i.e.*, that defendant took the victim "from one place to another." Second, defendant argues that his abduction of the victim was merely "incidental" to the rape and should not have resulted in a separate guilty verdict for kidnapping. We address each of those arguments in turn.

For purposes of the kidnapping statutes, "a defendant can be said to have moved the victim from 'one place' to 'another' only when the defendant changes the position of the victim such that, as a matter of situation and context, the victim's ending place is *qualitatively different* from the victim's starting place." *State v. Sierra*, 349 Or 506, 513, 254 P3d 149 (2010), *adh'd to as modified on recons,* 349 Or 604, 247 P3d 759 (2011) (emphasis added). There is no requirement that the victim be moved any specific distance; relatively minimal movement can, generally, satisfy the statutory requirement. *State v. Washington*, 266 Or App 133, 138, 337 P3d 859 (2014), *rev den*, 356 Or 767 (2015). Instead, the "hallmark" of qualitative difference is "whether the difference between the starting and ending places promotes or effectuates a substantial interference 'with another's personal liberty.'" *State v. Opitz*, 256 Or App 521, 535, 301 P3d 946 (2013) (quoting ORS 163.225(1)). In determining whether the defendant moved the victim to a qualitatively different place, we consider "'whether the movement served to limit the victim's freedom of movement and increase the victim's isolation.'" *Washington*, 266 Or App at 138 (quoting *State v. Walch*, 346 Or 463, 475, 213 P3d 1201 (2009)); *Sierra*, 349 Or at 516 ("[T]he degree by which the movement in question increases defendant's control over the victim, or isolates the victim from the view of others, is relevant to the determination whether a defendant has moved a victim 'from one place to another' only to the extent that those considerations tend to demonstrate the qualitative difference

between where the victim started ('from one place') and where the victim was as a result of the defendant's conduct ('another [place]')." (Quoting ORS 163.225.)).

On that point, our decision in *Washington* is instructive. The defendant in that case was convicted of first-degree rape and first-degree kidnapping for acts committed while selling magazine subscriptions door-to-door:

"Defendant * * * knocked on the door, and when the victim answered, forced his way in, locking the door behind him. The victim screamed. Defendant punched her in the face and stomach. He then dragged the victim away from the front door, which was surrounded by windows and in close proximity to neighboring units. Defendant dragged the victim up the stairs inside the apartment, continuing to beat her. Defendant tried to force the victim into a bathroom near the top of the stairs. Fearing that defendant would kill her once inside the bathroom, the victim resisted, and defendant ultimately shoved her to the ground outside the bathroom. Defendant began to rape the victim there. When the victim would not stop screaming, defendant shoved a plastic glove into her mouth. Defendant continued assaulting and raping the victim for some time. He eventually left, after threatening to kill the victim if she called the police."

266 Or App at 135-36. On appeal, the defendant challenged his conviction for kidnapping on the ground that the evidence was insufficient to permit a rational factfinder to find that he took the victim "from one place to another" as required by ORS 163.225(1)(a). Specifically, the defendant argued that the location at the top of the stairs where he raped the victim was not a qualitatively different place from the location where he originally apprehended the victim, near the front door. We rejected that argument, concluding instead that defendant's movement of the victim "from an area where she might have been seen by neighbors to a more isolated place at the top of the stairs" served to "limit her freedom and increase her isolation." *Washington*, 266 Or App at 139.

The foregoing principles defeat defendant's argument in this case. Defendant first moved the victim from her campsite on the edge of an open field to another campsite and then to a third campsite located at the bottom of

a wooded ravine. The evidence at trial was that the ravine was 10.5 feet deep, overgrown with bushes and trees, and difficult to see into. Thus, defendant's actions in dragging the victim from her campsite into the ravine moved her to a more isolated, hidden location where she was less likely to be discovered. *See Walch*, 346 Or at 476 (concluding that the asportation element of kidnapping had been satisfied where the defendant "moved the victim from one place (the open driveway) to a qualitatively different, more mobile and isolated place (the trunk of a car)"). That evidence was sufficient to permit a reasonable factfinder to find, beyond a reasonable doubt, that the two campsites were "qualitatively different."

For similar reasons, we reject defendant's contention that any movement of the victim "from one place to another" was merely "incidental" to his commission of the rape. *See Sierra*, 349 Or at 514 ("[T]he legislature sought to prevent prosecutors from charging kidnapping when a defendant's movement of a victim was only incidental to another crime."). In *Washington*, we explained that, "when a defendant's conduct in abducting a victim evinces *an intent to substantially interfere with the victim's personal liberty*, that conduct suffices to permit a finding that the abduction is not merely incidental to other related, but independent, crimes." 266 Or App at 141 (emphasis added); *see also State v. Worth*, 274 Or App 1, 12, 360 P3d 536 (2015), *rev den*, 359 Or 667 (2016) ("[P]roof that a defendant physically restrained the victim, thwarted escape attempts, sought to minimize the risk of discovery, or moved the victim to a place that would better facilitate the defendant's control over the victim, is probative of intent to substantially interfere with a victim's freedom of movement."); *Walch*, 346 Or at 475 ("In enacting the kidnapping statute, the drafters' primary concern was protecting the victim's personal liberty or freedom of movement." (Internal quotation marks omitted.)). That proposition is especially true where, as here, defendant's movement of the victim from one place to another occurred prior to the commission of the second crime, and it is reasonable to infer that the asportation was intended to isolate and control the victim. *Washington,* 266 Or App at 145 (taking note of the fact that "defendant's movement of the victim * * * was

preliminary to the subsequent rape" and thus reflected the defendant's "intent to *keep* the victim under control and isolated" (emphasis in original)). In this case, defendant maintained his control over the victim by holding onto her hair and dragging her to locations—the second campsite and the campsite in the ravine—where he could further isolate the victim. That evidence was sufficient to permit a rational factfinder to conclude that defendant intended to, and did in fact, substantially interfere with the victim's personal liberty. The trial court did not err in denying defendant's MJOA as to the kidnapping charge.

Because our decision reverses some of defendant's convictions, the entire case must be remanded for resentencing under ORS 138.222(5).[6] Although we occasionally provide guidance on issues that are likely to arise on remand, we decline to do that with respect to defendant's contentions regarding the imposition of consecutive sentences on his rape and kidnapping convictions. Even if a similar issue arises again, it will arise in a different posture, and the court might explain its findings and reasoning differently. *See State v. Shelters*, 225 Or App 76, 80, 200 P3d 598, *rev den*, 347 Or 44 (2009) (explaining that we need not address an assignment of error regarding consecutive sentences when the entire case must be remanded for resentencing under ORS 138.222(5)); *see also Trees v. Ordonez*, 354 Or 197, 220-21, 311 P3d 848 (2013) (declining to provide guidance on additional issues that were likely to arise in a different posture on remand).

Convictions on Counts 2 and 3 reversed; remanded for resentencing; otherwise affirmed.

---

[6] As pertinent here, ORS 138.222(5)(b) provides:

"If the appellate court, in a case involving multiple counts of which at least one is a felony, reverses the judgment of conviction on any count and affirms other counts, the appellate court shall remand the case to the trial court for resentencing on the affirmed count or counts."