No. 455 May 28, 2026 13

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JAMES CLINTON FITZHUGH,
*Defendant-Appellant.*

Jefferson County Circuit Court
21CR20638; A180144

Annette C. Hillman, Judge.

Argued and submitted April 23, 2025.

Sara F. Werboff, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services/Oregon Public Defense Commission.

Rolf C. Moan, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

SHORR, P. J.

Affirmed.

**SHORR, P. J.**

Defendant appeals from a judgment of conviction for three counts of online sexual corruption of a child in the second degree, ORS 163.432 (Counts 1, 2, and 4), following a stipulated facts trial before the court. The convictions stem from telephone conversations defendant had with his 15-year-old niece, C, on three different days.[1] On appeal, defendant asserts that the trial court misinterpreted the statute under which he was convicted and therefore erred in denying his motion for judgment of acquittal (MJOA). Specifically, he argues that the telephone calls he placed did not qualify as "online communication" under the statute. He further argues that the state failed to prove that he made an offer to meet a "child" because he was only offering to meet with C in the future after he was released from prison, at a time when she would be over age 18. Defendant further asserts that the call constituting Count 2 did not qualify as a distinct crime from the call constituting Count 1, and therefore the court should have granted his MJOA on Count 2; he alternatively argues that the court plainly erred in not merging those two counts. We conclude that phone calls are included in the applicable definition of "online communication," and that the statute does not contain a requirement that the offer to meet be for a time when the child will still be a child. The trial court therefore did not err in denying defendant's MJOA on all counts. We further conclude that the court did not err in finding that Counts 1 and 2 constituted separate crimes, and the court did not plainly err by not merging those verdicts. We therefore affirm.

## I.  FACTS

At the time of the charged crimes, defendant was incarcerated at the Deer Ridge Correctional Facility, in Madras, Oregon. On the three days in question, February 9, 10, and 23, 2019, defendant placed phone calls to C. The calls were completed via the prison TelMate system and were recorded. The calls contained sexual content that was initiated by defendant.[2]

---

[1] The court acquitted defendant of a fourth count of online sexual corruption of a child in the second degree, Count 3, stemming from a call on an additional day.

[2] Some of the details of the February 9 and 10 calls will be discussed in more detail below.

Defendant agreed to stipulated facts at trial, which included summaries of and quotations from the various conversations, and other anticipated testimony of C, C's mother, and law enforcement personnel. Prior to trial, defendant raised an argument that the state had not presented sufficient evidence that he had engaged in "online communication" as defined in the statute. In response, and over defendant's objection, the state called an additional witness who testified that the prison TelMate system used by defendant for the calls consisted of a regular telephone handset, but the calls were completed through a mechanism similar to a voice over internet protocol (VOIP) process and did not use a regular landline telephone system. The court convicted defendant on the three counts, and defendant filed this appeal.

## II.   STATUTORY INTERPRETATION

We begin with defendant's argument that the court erred in denying his MJOA based on the interpretation of the statute. Defendant raises two arguments: that his method of communicating with C was not a mode of communication covered by the statute, and that defendant's offer to meet C constituted an offer to meet her at a time when she would no longer be a child. We reject both of defendant's arguments and affirm the denial of his MJOA on those bases.

When a trial court denies a defendant's MJOA based on an interpretation of a statute, we review the denial for errors of law. *State v. Azar*, 372 Or 163, 169, 547 P3d 788 (2024). In interpreting a statute, we utilize our well-established framework set forth in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009), in which we consider the statute's text, in context, together with any available legislative history that we find helpful.

We begin with the statute under which defendant was convicted, ORS 163.432, which states, in relevant part:

"(1)   A person commits the crime of online sexual corruption of a child in the second degree if the person is 18 years of age or older and:

"(a)   For the purpose of arousing or gratifying the sexual desire of the person or another person, knowingly uses

an online communication to solicit a child to engage in sexual contact or sexually explicit conduct; and

"(b)   Offers or agrees to physically meet with the child."

ORS 163.431 contains relevant definitions:

"(1)   'Child' means a person who the defendant reasonably believes to be under 16 years of age.

"(2)   'Online communication' means communication that occurs via telephone text messaging, electronic mail, personal or instant messaging, chat rooms, bulletin boards or any other transmission of information by wire, radio, optical cable, cellular system, electromagnetic system or other similar means."

A.   *Mode of Communication*

Defendant asserts that his voice calls with C via the prison TelMate system do not qualify as "online communication." Defendant acknowledges that the catch-all definition technically could encompass telephone calls but maintains that the provision should be read in the context of the rest of the list of specific modes of internet and text communication. Pointing to the legislative history of the original enactment of the statute in 2007, defendant argues that the statute was aimed at the rising threat of internet predators, and specifically was focused on the anonymity of the internet and associated modes of communication.[3] He further argues that with the 2009 amendments, the legislature was concerned with covering future unknown technological advances, and despite explicitly adding telephone text messaging to the list, did not add telephone voice calls, a known technology at the time. Defendant therefore asserts that telephone calls were not intended to be covered under this statute as a mode of "online communication."

We conclude that the plain text of the definition of "online communication" covers telephone calls. The definition is incredibly broad, listing both specific methods of communicating and also general technologies that can be

---

[3] The original version of the statute defined "online communication" as "communication that occurs via electronic mail, personal or instant messaging, chat rooms, bulletin boards or any other method of communicating over the Internet." ORS 163.431(2) (2007), *amended by* Or Laws 2009, ch 517, § 1.

utilized in many forms of communication. A telephone call placed over a traditional landline includes the transmission of information via wire, one of the listed processes; calls from or to a cell phone would fall under the cellular system category; and VOIP calls would utilize a combination of wire, optical cable, cellular, and other electromagnetic systems comprising the internet. The plain text therefore extends to cover many different ways that phone calls are completed.

Defendant encourages us to look beyond the plain text to the legislative history, in order to constrain the meaning of an otherwise expansive definition. To be sure, when the statute was initially enacted in 2007, the primary concern appeared to be the changing nature of crime in the digital age, and the statute was aimed at addressing internet-based predators specifically. *See generally* Audio Recording, House Committee on Judiciary, HB 3515, Mar 19, 2007, https://olis.oregonlegislature.gov (accessed Apr 15, 2026). Defendant argues for a restrained interpretation of the definition, pointing to that legislative history, along with statements made during the 2009 amendment process that the changes to the online communication definition were a "housekeeping measure" and a "simple fix." Defendant argues that the 2009 amendments were intended to add one specific known technology that was not currently covered (cell phone text messaging) and that the catch-all provision was intended to capture only future technological advances that could not be anticipated, in order to avoid having to constantly amend the statute. By that reasoning, defendant argues that telephone voice calls, a known technology at the time, were intentionally not included, and therefore the statute should not be interpreted to extend to them.

Although we do not disagree with defendant's characterization of the legislative history in general, and we agree that our goal in interpreting a statute is to determine the intent of the legislature that enacted it, *Gaines*, 346 Or at 171, "[d]isregarding clear text in search of 'purpose' is perilous." *Bellshaw v. Farmers Ins. Co.*, 373 Or 307, 327, 567 P3d 434 (2025). Certainly, when a statute is ambiguous, and contains language that is subject to multiple plausible

interpretations, a consideration of the legislative history may constrain an otherwise broad construction of plain text. *Azar*, 372 Or at 178 ("Because our assessment of the text and context of [the statute] leaves open the question whether that provision encompasses [the] defendant's conduct, any legislative history that sheds light on that question could inform our final conclusion regarding the intended scope of the statute."). However, "our understanding of the legislative history can only inform our construction of the legislatively enacted text; it cannot justify the adoption of limitations that the text of [the statute] cannot support." *Id.* at 181.

The text of the statute here is clear in that "online communication" includes all transmissions of information by "wire, radio, optical cable, cellular system, electromagnetic system or other similar means." There is no plausible reading of that provision that does not encompass telephone calls, whether traditional landline calls or internet-based ones. It would therefore be improper to read the text as excluding otherwise covered modes of communication simply because they existed in 2009 and were not specifically listed.

Despite the text of the statute being clear, we note that our interpretation is also supported by the legislative history. Defendant is not incorrect that the 2009 amendment was characterized as "housekeeping" and a "simple fix" to the original bill. Audio Recording, House Committee on Judiciary, HB 2641, Mar 4, 2009, at 1:00:56 and 1:03:13 (comments of Rep Andy Olson and Yamhill County District Attorney Brad Berry), https://olis.oregonlegislature.gov (accessed Apr 15, 2026). However, the legislative history also contains acknowledgements that the original statute had holes and did not address certain kinds of communication that existed at the time. The purpose of the amendment was to make the definition of "online communication" as inclusive as possible, in order to avoid having to amend the language with technological advances, and to cover all methods of communication a predator may use. Audio Recording, House Committee on Judiciary, HB 2641, Mar 17, 2009, at 9:58 (comments of Rep Judy Stiegler), https://olis.oregonlegislature.gov (accessed Apr 15, 2026); Audio Recording, Senate Committee on Judiciary, HB 2641, May 15, 2009, at 2:03 (comments of

Rep Andy Olson and Yamhill County District Attorney Brad Berry), https://olis.oregonlegislature.gov (accessed Apr 15, 2026). We are therefore not convinced by defendant's argument that the original internet-based scope of the statute and the characterization of the amendments as "housekeeping" should constrain our understanding of the broad text of the statute. As the Supreme Court recently stated,

> "A statute rarely reflects a single policy objective that the legislature intends to be pursued at all costs. * * * [A] court that casts aside unambiguous text seeking to understand the statute's 'purpose' is at risk of elevating one purpose over another—a policy choice that may upset the balance struck by the legislature."

*Bellshaw*, 373 Or at 327.

The trial court therefore did not err in denying defendant's MJOA on the basis that he did not engage in "online communication" with C. Because we conclude that telephone calls are included in the definition of "online communication," we need not reach defendant's additional argument that the state failed to prove that he knew he was communicating over the internet when he placed the calls. It is undisputed that defendant knowingly made the phone calls; a phone call is "online communication" under the statute, regardless of whether it is over the internet or not, and defendant's knowledge of the precise mechanisms of the TelMate system is not relevant. We also need not reach defendant's fourth assignment of error, in which he challenges the admission of witness testimony regarding the nature of the VOIP process. Any error in admitting facts outside of the stipulated facts was harmless, as the state did not need to prove that the phone calls were placed through the internet in order to prove a violation of the statute.

B.    *Offer to Meet the Child*

Defendant additionally argues that the state failed to prove that he made an offer to meet a "child" because he was only offering to meet with C in the future after he was released from prison, at a time when she would be over age 18. We disagree with defendant's reading of the text of the statute.

As noted above, ORS 163.432 states:

"(1)   A person commits the crime of online sexual corruption of a child in the second degree if the person is 18 years of age or older and:

"(a)   For the purpose of arousing or gratifying the sexual desire of the person or another person, knowingly uses an online communication to solicit a child to engage in sexual contact or sexually explicit conduct; and

"(b)   Offers or agrees to physically meet with the child."

A "child" is defined as a person who the defendant reasonably believes to be under 16 years of age. ORS 163.431(1). It is not a defense to prosecution that the person was in fact communicating with law enforcement and not a child. ORS 163.434(2).

By its plain text, the statute does not require that the meeting be proposed to occur at any particular time, that the child agree to the meeting, that the meeting actually occur, or that the meeting actually be possible. The plain text requires only that the communication contain a solicitation of sexual contact or sexually explicit conduct, and an offer or agreement to physically meet. Defendant's interpretation of the statute as requiring the person to offer or agree to physically meet with the child *while they are still a child* inserts words into the statute that do not appear, which is contrary to our established method of statutory interpretation. *See* ORS 174.010 ("In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted[.]"). "The child" as used in paragraph (b) is simply a reference to the child to whom the solicitation is made in paragraph (a), and does not create an independent requirement that the proposed meeting be possible with the child while they are a child. Because no meeting need actually occur, we conclude that the victim's age at the time the meeting could potentially take place is not an element of the crime.[4]

---

[4] In his reply brief, defendant argues for the first time that this construction of the statute risks violating constitutional protections for free speech. Defendant did not raise that issue in his opening brief and we therefore do not reach it. *State v. Murga*, 291 Or App 462, 468, 422 P3d 417 (2018).

Our interpretation is consistent with the purpose behind the statute. One of the driving factors behind creating the crime of online sexual corruption of a child was that law enforcement had previously been constrained in addressing such behavior unless there was a physical meeting or an attempt at a physical meeting. The goal was to be able to intervene earlier, based on the conversations that were occurring, and to not have to wait for a relationship or interaction to proceed to a physical meeting. The legislature also received testimony about the corrupting influence of sexual conversations between children and adults, even absent any physical contact, and how an offer to meet removed conversations from the category of fantasy and role play and moved them into the more dangerous realm of reality, further eroding a child's healthy conceptions regarding sexual relationships. *See generally* Audio Recording, House Committee on Judiciary, Mar 19, 2007, HB 3515, https://olis.oregonlegislature.gov (accessed Apr 15, 2026); Audio Recording, House Committee on Judiciary, HB 3515, Apr 6, 2007, at 1:52:55 (comments of representative of Oregon Defense Lawyers Association), https://olis.oregonlegislature.gov (accessed Apr 16, 2026). That a meeting with the child is impossible—whether it be due to geography, incarceration, the child's refusal, there not being an actual child involved in the communication due to law enforcement intervention, or any number of other realities that could prevent a meeting from occurring—does not render the communication lawful. It is the act of communicating a solicitation and an offer to meet in person—creating the possibility of taking the relationship into "real life"—that is targeted by this statute.

Under the appropriate interpretation of the statute, the state did not fail to prove that defendant made the requisite offer to meet the child. Defendant does not dispute that he proposed meeting with C. We therefore conclude that the trial court did not err in denying defendant's MJOA.

### III.   SEPARATE ACTS AND MERGER

In his second assignment of error, defendant argues that Count 2, relating to the February 10 call, should have been dismissed because it did not constitute a separate crime from Count 1, the February 9 call. Alternatively, in

his fifth assignment of error, defendant argues that Counts 1 and 2 should have merged into a single conviction. We conclude that there was sufficient evidence for the factfinder to find two separate crimes, and therefore the trial court did not err in denying defendant's MJOA on Count 2. For similar reasons, the court did not plainly err in not merging the verdicts on Counts 1 and 2 into a single conviction.

A.  *MJOA on Count 2*

Defendant first argues that Counts 1 and 2 were not separate crimes, and that the trial court erred when it did not acquit him on Count 2. In reviewing the denial of an MJOA, we view the facts in the light most favorable to the state to determine whether a rational trier of fact could find each element of the charged offense beyond a reasonable doubt. *State v. Eastman*, 282 Or App 563, 565, 385 P3d 1182 (2016), *rev den*, 361 Or 311 (2017). The issue presented reduces to whether the state presented sufficient evidence to allow a reasonable trier of fact to find that defendant subjected C to two separate acts of online sexual corruption of a child, one on February 9 and one on February 10.[5] We conclude that it did.

As noted above, second-degree online sexual corruption of a child requires proof that the defendant used an online communication to solicit a child to engage in sexual contact or sexually explicit conduct and offered or agreed to physically meet with the child. ORS 163.432(1). ORS 163.431 contains the relevant definitions:

"(3)   Sexual contact' has the meaning given that term in ORS 163.305.

"(4)   'Sexually explicit conduct' has the meaning given that term in ORS 163.665.

"(5)   'Solicit' means to invite, request, seduce, lure, entice, persuade, prevail upon, coax, coerce or attempt to do so."

"Sexual contact" is defined in ORS 163.305(5) as "any touching of the sexual or other intimate parts of a person or causing such person to touch the sexual or other intimate parts

---

[5] Defendant's argument on this point does not include Count 4.

of the actor for the purpose of arousing or gratifying the sexual desire of either party." "Sexually explicit conduct" is defined in ORS 163.665(3) as actual or simulated

"(a)   Sexual intercourse or deviant sexual intercourse;

"(b)   Genital-genital, oral-genital, anal-genital or oral-anal contact, whether between persons of the same or opposite sex or between humans and animals;

"(c)   Penetration of the vagina or rectum by any object other than as part of a medical diagnosis or treatment or as part of a personal hygiene practice;

"(d)   Masturbation;

"(e)   Sadistic or masochistic abuse; or

"(f)   Lewd exhibition of sexual or other intimate parts."

It is undisputed that the February 9 call contained a solicitation and an offer to meet. Defendant described his desire to engage in various sex acts with C and proposed getting together with her in person. The following night, on February 10, in a separate call, defendant referenced the things discussed in the previous night's call and stated that he would like to talk more about stuff like that, mentioned wanting to be next to C in bed and to keep her warm in a snow storm, and alluded to thinking about her while masturbating in the shower. He stated that he looked forward to when they could share more of each other and stated that he was going to bring "every kind of pleasure" to her heart, mind, soul, and body.

Defendant asserts that the state failed to present evidence that one act of solicitation ended before another began. He argues that the second call did not contain a distinct solicitation and merely referred back to the prior conversation, as a continuation thereof. He also briefly asserts that the second call did not involve a new meeting request, but rather simply reminders about the previous proposition. The state asserts that the calls were separate "online communications," and not merely multiple statements made during one communication, and that the second conversation contained a distinct proposal of future sexual contact.

We conclude that, viewing the evidence in the light most favorable to the state, the February 10 call contained both a solicitation and an offer to meet with the child, distinct from the February 9 call. The February 10 call contained "solicitation" of sexually explicit conduct in that defendant referred to the previous discussion of mutual oral sex, stated that he wanted to continue to have such conversations and asked if that was okay with C, and implied that he masturbated while thinking about her. His statements that he was looking forward to when they could share more of each other and that he was going to bring pleasure to her body was an invitation to meet in person.

Defendant likens this case to *Eastman*, in which we concluded that the evidence was insufficient to allow a reasonable trier of fact to find that the defendant subjected the victim to three separate acts of sexual intercourse by forcible compulsion based on evidence of multiple penetrations occurring over the course of a few minutes. *Eastman*, 282 Or App at 570-71. We concluded that the state had not presented evidence sufficient to permit a finding that one act of forcible sexual intercourse ended before the other began, and the facts presented were consistent with a single act of sexual intercourse. *Id.* at 571. Because the state had only proved a single count of rape, the trial court therefore erred in denying the defendant's MJOA on the other two counts. *Id.* at 571-72.

We disagree with defendant's analogizing of the current matter to that in *Eastman*. Defendant here engaged in two separate phone calls, each 30 minutes long, occurring on back-to-back evenings. Although the subject matter was similar, and defendant made reference to the first conversation during the second conversation, the record was sufficient to support a finding that one act ended before the other began, and that they were distinct acts, separated by an entire day. This case is therefore factually distinct from *Eastman*.

The record contained sufficient evidence for the factfinder to find that the February 10 call constituted an act of online sexual corruption of a child, distinct from the February 9 act, and was not merely a continuation of the

previous night's solicitation. The trial court therefore did not err in denying defendant's MJOA on Count 2.

## B.  *Merger*

Defendant argues in the alternative that, even if the record was sufficient to find two separate acts of online sexual corruption of a child, Counts 1 and 2 should have merged into a single conviction because they were part of the same criminal episode and one offense did not end before the other began. He acknowledges that he did not preserve that argument, and therefore requests plain error review. Under ORAP 5.45, we may review an unpreserved error as plain error if "(1) the error is one of law; (2) the error is apparent, that is, the legal point is obvious, not reasonably in dispute; and (3) the error appears on the face of the record, in that we need not go outside the record or choose between competing inferences to find it." *State v. Loving*, 290 Or App 805, 809, 417 P3d 470 (2018). Whether verdicts should have been merged is a legal question. *Id.*

ORS 161.067(3) states, in relevant part:

"When the same conduct or criminal episode violates only one statutory provision and involves only one victim, but nevertheless involves repeated violations of the same statutory provision against the same victim, there are as many separately punishable offenses as there are violations, except that each violation, to be separately punishable under this subsection, must be separated from other such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent."

The duration of a pause and what occurred during that pause are questions of fact, while the question of whether the pause is "sufficient" to allow for multiple convictions is one of law. *State v. Reed*, 256 Or App 61, 63, 299 P3d 574, *rev den*, 353 Or 868 (2013). A sufficient pause is "a temporary or brief cessation of a defendant's criminal conduct that occurs between repeated violations and is so marked in scope or quality that it affords a defendant the opportunity to renounce his or her criminal intent." *State v. Huffman*, 234 Or App 177, 184, 227 P3d 1206 (2010). "For repeated violations to be separately punishable, one crime must end

before another begins." *Id.* at 185 (internal quotation marks omitted).

As discussed above, the record was sufficient to support a finding that one act ended before the other began, making them two separate acts. The acts were also separated by a sufficient pause. The exact time that each call began is not included in this record; however, in the February 10 call defendant referred to the call "last night," and there were multiple indicators that the February 10 call occurred at night, including that C's mother said good-night to C, defendant mentioned calling after C's sister had gone to bed, and C said that only her grandmother was still awake. Each call was 30 minutes. The calls were therefore separated by roughly a day, which is more than a temporary or brief cessation, and afforded defendant the opportunity to renounce his criminal intent. The February 9 call ended before the February 10 call began. The court therefore did not plainly err in failing to merge the convictions.

Affirmed.